BRITISH–AMERICAN LAND AND INVESTMENT COMPANY v. WESTERN LAND AND SECURITIES COMPANY.[1]

November 30, 1906.

Nos. 14,963—(153).

**Real Estate Broker—Evidence.**

> The evidence is sufficient to sustain the finding of the jury that the contract in question was one of agency for the sale of lands upon commission, and that the sale was procured through the efforts of respondent.

Action in the district court for Ramsey county to recover $3,360 as commissions on the sale of land. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $2,473.50. From an order denying a motion for judgment notwithstanding the verdict and denying a motion for a new trial, defendant appealed. Affirmed.

*B. H. Schriber* and *Young & Lightner,* for appellant.

*Todd & Mayo* and *Durment & Moore,* for respondent.

LEWIS, J.

Appellant owned a large amount of land in Billings county, North Dakota, and respondent owned a quantity of Canadian farming land, and was also, to some extent, engaged in selling lands for other owners on commission. In February, 1905, the two companies entered into an arrangement by which appellant's lands in North Dakota were listed with respondent at $4.50 per acre for the season at retail, and the

[1] Reported in 109 N. W. 826.

principal question in the case is whether respondent company was employed as the agent of appellant, or just a mere option was granted to purchase the lands at $4.50 an acre.

There is evidence in the case to sustain respondent's position, and the main facts relied upon to constitute a contract of agency are that early in February, 1905, an officer of respondent company had a conversation with the manager of appellant company at St. Paul, which covered the general subject of respondent's ability and facilities to sell the lands in question. This conversation was followed up by a letter written by appellant's manager in which price and terms were stated. After receipt of this letter a representative of respondent was furnished with maps and advertising material, and one R. B. Daniel, residing in Marshall, Minnesota, was appointed respondent's agent to sell the lands and the advertising maps and data were turned over to him, and he was told there was a prospective purchaser by the name of Jennings, at Marshall, with whom he was requested to negotiate a deal for some of the lands.

The contract of agency with Daniel was dated February 23, 1905, and respondent notified appellant that it had appointed Mr. Daniel its agent at Marshall, naming other agents at other points, for the purpose of selling the lands in question, and appellant agreed it would not appoint any agents or attempt to do any business regarding the sale of its lands in those localities.

Although the emergency contract between respondent and Daniel, Exhibit K, was, in itself, incomplete, when considered with the other evidence there is no doubt that the lands referred to in North Dakota were those of appellant. And further, the fact that the lands are referred to as belonging to respondent does not, in view of the other evidence, conclusively characterize respondent's relation to the lands as an owner.

On the 23d of March appellant also appointed Mr. Daniel its agent at Marshall to dispose of its lands, and on or about May 2 appellant, through the efforts of Mr. Daniel, sold nine hundred sixty acres to Jennings for a consideration of $7,680, and in payment received a contract on certain lands in Beltrami county, Minnesota, the value of which was fixed at $4,000, and notes for the balance of the amount. It is conceded that respondent had no notice appellant was negotiating

with Jennings through Daniel as its own agent until after the consummation of the sale.

This action was brought for the purpose of collecting the commission which respondent claimed to be due upon the theory that Daniel was its agent and Jennings its prospective purchaser, and that the deal was in fact brought about by the instrumentality of respondent and not through the agent of appellant.

Respondent recovered a verdict of $2,473.50, and appellant insists in this court that it was entitled to judgment notwithstanding the verdict, upon the ground that it conclusively appears from the evidence that there never was any contract of agency; that respondent had simply an option to purchase any of its lands at $4.50 per acre retail and sell for whatever price it pleased, and that Jennings was not a purchaser produced by respondent who was ready, willing, and able to complete the purchase.

It seems to us that appellant's whole claim rests upon the nature of Exhibit F, the letter of February 16, 1905, written by appellant to respondent. If that letter embraces the entire contract of agency between the parties, then we should unhesitatingly say that appellant's contention was correct. The letter merely fixes a price of $3.50 for the land in township lots, and $4.50 at retail net to appellant, specifying that a down payment would be accepted not to exceed one-fourth of the cost price. That the letter did not embrace the entire contract is evident from its terms:

> Following up a conversation had with your Mr. J. B. Ladd yesterday, and on the strength of the suggestion by him that he thought you would be able to handle some of our land, we beg to quote you the following prices.

The letter then expresses the confidence that they will be able to do a profitable business with respondent.

The general manager of appellant company testified that the conversation with respondent's representatives covered a wide range; that there was talk about the appointment of agents and the bringing in of business; that respondent was to devote its time to selling appellant's lands, but insisted that all of such discussion and statements were made with reference to an option and not an agency.

On the other hand, one of the officers of respondent company testified that appellant's general manager stated that the regular retail price of its land was $8 per acre; that he was willing to show the lands to any prospective purchaser brought by respondent; that he would protect respondent on any deal secured either directly or through the efforts of any of its agents; and that Exhibit F was written in answer to a request by respondent for a statement in writing of the net price for the season, and that the letter did not cover the entire contract. Another representative of respondent testified to substantially the same facts.

While Mr. Daniel denied that respondent had furnished him any maps or advertising literature concerning these lands, he admitted that he had been appointed its agent for the purpose of selling appellant's lands, and admitted that a representative of respondent called upon him and gave him a map of the lands in question, and mentioned Mr. Jennings as a prospective purchaser.

In looking over the record we do not find that the word "agent" was used, and the character of the employment can only be ascertained from the conduct of the parties, their conversation and writings considered as a whole. Both parties may be honest in their contentions as to the effect of the contract. Appellant may never have intended to employ respondent as its agent, and respondent may honestly have believed that it had secured a contract of agency so that whatever business it brought to appellant through its subagents would inure to its benefit. The trial court concluded that it was a case where the character of the employment was in doubt, and submitted the question to the jury to determine. The jury decided in favor of respondent, and we find no substantial reason for challenging the correctness of the conclusion.

The nine hundred sixty acres of land sold by appellant to Jennings were paid for, in part, by an assignment by the latter of a certain contract for the purchase of certain lands in Beltrami county, Minnesota, known as the "Works Contract." Appellant terms this transaction an exchange, or trade, of lands and not a sale. The agreement between the parties is in writing, dated May 2, 1905, and by its terms appellant agreed to convey to Jennings the land in question, who covenanted and agreed with appellant to pay as and for the purchase price

the sum of $7,680, as follows: $4,000 by assignment of the contract for a deed of the Beltrami county land, and the balance in five annual equal instalments, commencing November 1, 1906, with interest at six per cent.

At the trial the court instructed the jury to determine what appellant company realized by that transaction, and that if they should find the Beltrami county lands netted appellant more than $5.50 per acre (which included $1 per acre commission to Daniels), then respondent would be entitled to recover that excess. The transaction was no less a sale because appellant received in payment for its land other property in exchange at a stipulated value, and if a sale was made of the land in question, and respondent, as appellant's agent, was the procuring cause of such sale, it is entitled to the commission upon the basis submitted by the court to the jury. We do not deem it necessary to refer to the other assignments of error.

Order affirmed.